In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-1663

THE GRIGOLEIT COMPANY,

*Plaintiff-Appellant,*

*v.*

WHIRLPOOL CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 05-CV-2126 — **Colin S. Bruce**, *Judge.*

ARGUED SEPTEMBER 29, 2014 — DECIDED OCTOBER 16, 2014

Before EASTERBROOK, WILLIAMS, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* For many years Whirlpool purchased injection-molded plastic knobs and decorative metal stampings from Grigoleit. In 1992 Whirlpool told Grigoleit that it would replace its products with those made by Phillips Plastics. After concluding that Phillips was using a method protected by its patents, Grigoleit demanded that Whirlpool switch back. In 1993 they struck a bargain: Grigoleit would license Whirlpool and Phillips to practice the pa-

tents, and instead of royalties Grigoleit would get some of Whirlpool's business. Paragraph 3 of the contract says:

> Whirlpool shall not be obligated to pay Grigoleit any monies as royalties … so long as Whirlpool continues to purchase from Grigoleit Whirlpool's requirement for present styling of knobs for the "Estate" and "Roper" brand lines of automatic clothes washers and dryers and so long as … Whirlpool continues to give serious consideration to Grigoleit [for other product lines when Grigoleit can provide] more than parity in technology, quality, service, delivery and price in comparison with other qualified suppliers[.]

The agreement expired, with the patents, in 2003.

From 1993 through 2003 Whirlpool bought all knobs for the Estate and Roper lines from Grigoleit. But it bought some knobs for other lines from Grigoleit's competitors, and Grigoleit concluded that it had not received the "serious consideration" to which ¶3 entitled it. That dispute was arbitrated, as the contract provided. The arbitrator concluded that Whirlpool had failed to consider Grigoleit's parts for some lines of washers and dryers "and therefore is liable for payment of money royalties or damages as the courts may determine." In this suit under the diversity jurisdiction, Grigoleit demanded damages calculated by a contract measure: the profit it would have made had Whirlpool purchased its requirements of knobs exclusively from Grigoleit. The district court held, however, that Whirlpool had not promised to give Grigoleit's knobs serious consideration; instead it had promised to pay royalties if it failed to do so. 2010 U.S. Dist. LEXIS 45524 (C.D. Ill. May 10, 2010). Unfortunately, the contract failed to specify the royalty Whirlpool would owe if it did not meet the conditions for a royalty-free license. The court concluded that a reasonable royalty falls in the range

of 1¢ to 12¢ per part and scheduled proceedings to produce a definitive royalty. 2014 U.S. Dist. LEXIS 686 (C.D. Ill. Jan. 3, 2014). The parties then agreed that royalties computed under the district court's approach come to $140,000, but Grigoleit reserved its right to contest the two rulings on appeal.

Grigoleit's principal argument in this court is that, once Whirlpool took advantage of the royalty-free license under ¶3, it became bound for the duration of the contract to give Grigoleit "serious consideration" for all of its requirements for parts that Grigoleit could supply. Paragraph 3's language forecloses that contention. It says, twice, that Whirlpool gets a royalty-free license "so long as" it purchases Grigoleit's knobs for two product lines and gives it "serious consideration" for the rest. The phrase "so long as" permitted Whirlpool to change how it performed, getting a royalty-free license in some periods and paying royalties in others. Whirlpool failed to keep its promise; for some periods it neither gave Grigoleit "serious consideration" nor paid royalties. This allowed Grigoleit to seek compensation, which it has done. But what it is entitled to are "royalties" rather than contract damages under a theory that once Whirlpool took a royalty-free license for any period it was bound to meet the conditions of ¶3 until the patents expired.

Grigoleit protests that the district court's approach treats the contract as an option, held by Whirlpool, rather than as bilateral and binding. Grigoleit accuses the district judge of ignoring ¶1, which grants Whirlpool a non-exclusive license and releases it from liability for pre-agreement infringement. But the district court did not ignore Grigoleit's promises; instead it read the contract as including Whirlpool's promise to pay royalties—without any need for Grigoleit to show

that its patents were valid and infringed—unless it met the conditions in ¶3. That's a substantial promise by Whirlpool.

Paragraph 7, which says that the contract terminates if Whirlpool stops buying Grigoleit's products for the Roper and Estate lines, does not imply that Whirlpool must give "serious consideration" to Grigoleit's parts for all lines, indefinitely, once it buys even one of Grigoleit's knobs; instead it reinforces the inference that the contract continues, but Whirlpool must pay royalties, if it stops giving "serious consideration" to Grigoleit's offerings for other lines.

Nonetheless, Grigoleit contends that even if Whirlpool was entitled to change its mind and shift from buying knobs to paying royalties, the amount it owes still should be calculated under the lost-profits method of contract law. The main reason that it gives for this contention is that during their negotiations the parties decided not to set a per-piece royalty. Only a contract measure of damages then is possible, the argument concludes. Yet ¶9 of the contract is an integration or entire-agreement clause, in which Grigoleit and Whirlpool disclaim any understandings that do not appear in the contract's final text. What the text tells us is that Whirlpool owes "royalties," and lost profits differ from royalties. The caption on the contract is "LICENSE AGREEMENT" and the heading on ¶3 is "Royalties". The district court therefore was not obliged to treat ¶3 as a requirements contract; the deal is a patent license.

AFFIRMED